# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON MOYER,** | : | |
| Plaintiff | : | CIVIL NO. 3:CV-11-1811 |
| v. | : | (Judge Caputo) |
| **GENE BERDANIER,** *et al.*, | : | |
| Defendants | : | |

# M E M O R A N D U M

## I.  Introduction

Presently before the Court is Defendant Berdanier's Motion for a Protective Order and Objections to Proposed Discovery. (Doc. 36.) Warden Berdanier objects to subpoenas Plaintiff issued to two independent contractors who were hired by Schuylkill County Prison Board to conduct various investigations at the the Schuylkill County Prison (SCP) at Warden Berdanier's request. Specifically, Warden Berdanier seeks to prevent the disclosure of the investigative reports which: (1) assessed specific incidents of employee misconduct (the Carney reports); and (2) reviewed the security and operational management of the prison (the Shannon report). Both reports were commissioned and completed, prior to Mr. Moyer's assault at the SCP, and do not involve the three officers who assaulted Mr. Moyer. Warden Berdanier seeks a protective order to prevent the disclosure of the reports

based on objections of relevancy and/or security concerns. Warden Berdanier offers to submit the disputed reports for *in camera* review. He also requests that if the reports are deemed discoverable, that a protective order be issued limiting their disclosure to Plaintiff's attorneys and consultants, and restricting their further disclosure to third parties, including the Plaintiff who is incarcerated. Mr. Moyer counters that: (1) Warden Berdanier does not have standing to challenge the subpoenas addressed to non-parities; (2) the requested documents are relevant to his *Monell* claims[1] against Schuylkill County and thus are discoverable. Finally, Mr. Moyer notes that he is not opposed to entering into a confidentiality agreement limiting the review and distribution of the Shannon report.

For the reasons that follow, Warden Berdanier will be required to submit two of the Carney reports and the Shannon report to the Court for *in camera* review. The Court will deny the motion with respect to the July 25, 2010, Carney report relating to Correctional Officer (CO) Sullivan's alleged assault of an SCP inmate.

**II.    Background**

On September 30, 2011, Mr. Moyer, with the assistance of counsel, filed the above captioned civil rights complaint. (Doc. 1, Compl.) In his Complaint, Mr. Moyer alleges SCP COs Galavage, Yeager and Prenata violated his Eighth Amendment rights when they assaulted him on April 7, 2011, and then deprived him of medical treatment for his injuries. He names SCP's Warden, Gene Berdanier, as

---

[1] *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

a defendant because he is alleged to have known of Mr. Moyer's physical condition after the assault and his "medical neglect" by the prison. (*Id*. at ¶ 72.) Warden Berdanier is also alleged to have maintained and fostered an environment at the SCP, prior to April 2011, which encouraged and condoned staff abuse of prisoners as well as the denial of medical care. (*Id*. at ¶ 77 and ¶ 80). The alleged existence of these unacceptable policies created an unreasonable risk of harm to Mr. Moyer and led to his unprovoked assault and denial of medical attention following the assault. (*Id*. at ¶ 84).

On June 4, 2012, Plaintiff's counsel subpoenaed documents from two consultants hired by Schuylkill County who are not parties to this action: Mr. Robert Shannon and Mr. Michael Carney . *See* Docs. 36-1 at ECF p. 2 and 5. The Court will address each subpoena request in turn.

## III. Relevant Legal Standards

It is well settled that Fed. R. Civ. P. 26 establishes a fairly liberal discovery policy. The Federal Rules of Civil Procedure allow discovery on any relevant, non-privileged material that is admissible or reasonably calculated to lead to admissible evidence. *See* Fed.R.Civ.P. 26(b)(1). However, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52, 98 S.Ct. 2380, 2389-90, 57 L.Ed. 253 (1978); *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

"Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the Court's discretion and judgment." *McConnell v. Canadian Pacific Realty Co.*, 280 F.R.D. 188, 192 (M.D Pa. 2011). It has long been held that decisions relating to the scope of discovery permitted under Rule 26 rest in the sound discretion of the Court. *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 778 (3d Cir. 2000)(explaining that a trial court's discovery ruling will only be disturbed if "the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible").

It is well established that the party wishing to obtain a protective order to prevent the disclosure of information through the discovery process has the burden of demonstrating that "good cause" exists for the order. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); Fed.R.Civ.P. 26(c). "Good cause" is only established when the movant demonstrates that disclosure would cause a clearly defined and significant injury. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). The Court must consider seven factors in determining whether good cause for a protective order exists. These factors are:

> (1) whether disclosure will violate any privacy interests;
> (2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> (3) whether disclosure of the information will cause a party embarrassment;
>
> (4) whether confidentiality is being sought over information important to public health and safety;
> (5) whether the sharing of information among litigants will promote fairness and efficiency;

> (6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> (7) whether the case involves issues important to the public.

(*Id.*)(citing *Pansy*, 23 F.3d at 787-91). "[T]he good cause balancing test operates under 'a strong presumption against entering an order of confidentiality whose scope would prevent disclosure of information that would otherwise be accessible under a relevant freedom of information law." *EEOC v. Kronos Inc.*, 694 F.3d 351, 359 (3d Cir. 2012)(quoting *EEOC v. Kronos Inc.,* 620 F.3d 287, 302 (3d Cir. 2010)).

The objecting party must demonstrate in specific terms why a particular discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F.Supp. 255, 258 (E.D. Pa. 1982). The party attempting to withhold the release of relevant material on the grounds of privilege must also "describe the nature of the documents, communications, or other tangible things not produced or disclosed ... in a manner that ... will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

Finally, pursuant to Middle District Local Rule 26.3,

> [c]ounsel for movant in a discovery motion shall file as a part of the motion a statement certifying that counsel has conferred with counsel for the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the court, together with a detailed explanation why such agreement could not be reached. If the part of the issues raised by the motion have been resolved by agreement, the statement shall specify the issues so resolved and the issues remaining unresolved.

## IV. Discussion

### A. Standing

Mr. Moyer claims that Warden Berdanier does not have standing to quash or modify the subpoenas directed to the non-parties, Mr. Carney and Mr. Shannon. (Doc. 41, Pl.'s Opp'n Br. Mot. for Protective Order at ECF p. 4.) Fed. R. Civ. P. 45 establishes the rules for discovery directed to individuals and entities that are not parties to the underlying suit. Fed. R. Civ. P. 45(b)(1) requires that if a subpoena is served on a non-party and requests the production of documents, notice must be served on each party before the subpoena is served.[2] Subpoenas served in accordance with Fed. R. Civ. P. 45 must fall within the scope of discovery set forth in Fed. R. Civ. P. 26(b)(1). *First Sealord Sur. v. Durkin & Devries Ins. Agency*, No. 10-832, 2013 WL 180223, *14 (E.D. Pa. Jan. 17, 2013). Rule 45 requires a court to quash or modify a subpoena in certain circumstances, Fed. R. Civ. P. 45(c)(3)(A), and permits it to do so in other circumstances, Fed. R. Civ.P. 45(c)(3)(B). "The decision whether to quash, modify or condition a subpoena is within the district court's discretion." 9A Wright & Miller, *Federal Practice & Procedure* § 2463.1 (3d ed. 2008).

Ordinarily, a party does not have standing to move to quash a subpoena served on a third party. Rather, only the person or entity to whom a subpoena is directed has standing to file a motion to quash. *Greene v. Philadelphia Housing Authority*, 789 F.Supp.2d 582, 586 (E.D. Pa. 2011), *aff'd*, 484 F. App'x 681 (3d Cir.

---

[2] It appears that Mr. Moyer simultaneously served the subpoenas on the defendants the same time as he served the non-parties. *See* Doc. 36-1.

2012). "An exception to this rule permits a party to move to quash when it 'claims some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty.'" *Savant Systems, LLC v. Crestron Electronics, Inc.*, No. 12-MC-51, 2012 WL 987404, at *3 (E.D. Pa. Mar. 22, 2012)(quoting *Davis, v. Gen. Accident Ins. Co. of Am.*, No. 98-4736, 1999 WL 228944, at *2 (E.D. Pa. Apr. 15, 1999)); *see also Thomas v. Marina Associates*, 202 F.R.D. 433, 434-35 (E.D. Pa. 2001). Therefore, Warden Berdanier (or Schuylkill County) may only object to Plaintiff's subpoenas addressed to Mr. Carney and Mr. Shannon on the basis of a personal right or privilege regarding the information requested. *See* Fed. R. Civ. P. 45(c)(3)(B).

Warden Berdanier argues that the subpoenas seek documents and information not relevant to Mr. Moyer's claims and that the disclosure of the Shannon report would threaten the security of the facility he is entrusted to manage. The requested reports were undertaken and paid for by Schuylkill County at the request of Warden Berdanier. The information in the Carney reports led to the discipline of staff at Warden Berdanier's facility. The Shannon report led to additional tool control and other security suggestions by Mr. Shannon being implemented at the prison. Mr. Moyer cannot have it both ways. He cannot name Warden Berdanier (and not Schuylkill County) for the purpose of establishing his *Monell* claim,[3] and then suggest the Warden does not have standing to challenge

---

[3] "The essence of Mr. Moyer's [*Monell*] claim is that the defendant Warden has promulgated policies condoning corrections officers' abuse of inmates and failed adequately to supervise them." (Doc. 41, Pl.'s Opp'n Br. Mot. for Protective Order at ECF p. 6.)

the release of documents related to his management of the prison.  As such, for the purposes of this case, as Warden Berdanier is sufficiently "affected" by the potential disclosure of the requested reports as he is the individual responsible for management, orderly operation and security of the SCP for the benefit of inmates and staff alike, and as a party in this action, he has standing to challenge the subpoenas addressed to Mr. Carney and Mr. Shannon.  Alternatively, given the unique and sensitive nature of prison administration, the Court would rather err on the side of caution and address Warden Berdanier's challenges to the release of the requested reports.[4]  Nonetheless, Schuylkill County is now an intervener in this action, thus any procedural objection Mr. Moyer may have had to Warden Berdanier's standing to object to the subpoenas is now an argument of form over substance.

---

[4] This concern is underscored based on the absence of any evidence that the parties, prior to filing this discovery motion, complied with the requirement of Pa M.D. LR 26.3 by conferring in a good faith effort to resolve by agreement the discovery dispute without the intervention of the court.  Counsel are reminded that a certificate of nonconcurrence in a motion does not eliminate the need for counsel to comply with LR 26.3. *See* LR 7.1 and LR 26.3.  While the Court does acknowledge Plaintiff's counsel did confer with Warden Berdanier's counsel prior to filing their opposition brief, this effort was undertaken after the service of the subpoenas and after the filing of the present motion. (Doc. 40 at ECF p. 5).  Moreover, although Plaintiff's counsel notes that the parties "believe that [a protective agreement] can be reached without this Court's involvement" as to the Shannon report only, there is no certificate of concurrence or other indication by Warden Berdanier's counsel reflecting this agreement.  Thus, the Court cannot dismiss this portion of Warden Berdanier's motion as moot as suggested by Plaintiff's counsel.

## B. The Carney Reports

On June 4, 2012, Mr. Moyer's counsel sent a subpoena to Michael Carney via certified mail requesting the following documentation:

> All documents regarding your investigation of Schuylkill County Prison employees from 2008-present including but not limited to all reports, statements, recordings, images, notes, transcripts and videos of any person providing information or created by you.

(Doc. 36-1 at ECF p. 5.) Counsel for Warden Berdanier "has reviewed the documents subpoenaed from Michael Carney, who is a retired state police officer who was retained by the County of Schuylkill to investigate incidents of misconduct by prison employees." (Doc. 37, Br. in Supp. Mot. for Protective Order at ECF p. 6.)[5] Defense counsel then goes on to summarize the three reports Mr. Carney submitted to the Schuylkill County Prison Board. (*Id*.) Two of the reports, the July 10, 2010, and the November 13, 2010, reports investigated "allegations of sexual harassment and inappropriate workplace behavior by staff members" by SCP Correctional Officers Sullivan, Farrone and Harner. (*Id*. at ECF pp. 6-7.) The third Carney report, involves a "July 25, 2010, investigation into an allegation of assault on an inmate by a Correctional Officer, staff member Mark Sullivan." (*Id*. at ECF p. 7.) Defense counsel notes that "[t]he investigations were initiated by the County of Schuylkill upon information received by Warden Berdanier. In each case, the

---

[5] It is settled principle that statements made by counsel in brief are not part of the record and will not be treated as such unless stipulated to or a matter of public record. *Braden v. Univ. of Pittsburgh*, 477 F.2d 1, 6 (3d Cir. 1973); *see also Kauffman v. Johnston*, 454 F.2d 264 (3d Cir. 1972). No affidavit or other information has been submitted by defense counsel to support the statements he makes regarding the Carney reports or the Shannon report.

subject Correctional Officer was terminated." (*Id.*)

The only objection Warden Berdanier raises with respect to the release of the Carney reports is relevancy. (*Id.*) Although Defense counsel represents that none SCP COs who allegedly assaulted Mr. Moyer were involved in any of the three Carney reports, there is no evidence on record to support this assertion. Moreover, any investigation into the allegations of SCP staff abusing an inmate would be relevant to Mr. Moyer's *Monell* claim that it was the "Warden's policies, customs and practice that lead to prison abuse and which caused Mr. Moyer's injuries." (Doc. 41, Pl.'s Opp'n Br. Mot. for Protective Order at ECF p. 2.)[6] Thus the release of the July 25, 2010, report is relevant and discoverable. Mr. Carney will be directed to provide this report to Mr. Moyer's counsel.

The relevancy of the July 10, 2010, and November 13, 2010, reports is not as easily resolved. Initially, the Court does not agree with Plaintiff's broad sweeping representation that "[b]y the defendant Warden's own admission, the Carney Materials detail the defendant Warden's handling of three corrections officers' abuse of inmates in the nine months preceding Mr. Moyer's assault by corrections officers." (Doc. 41, Pl.'s Opp'n Br. Mot. for Protective Order at ECF pp. 5-6.) Nothing in the record before the Court clarifies whether all three Carney reports address staff abuse of inmates. Warden Berdanier's counsel does not specify whether the victims of the two incidents of sexual harassment and inappropriate workplace

---

[6] All counsel are requested to review the Local Rules with regard to the captioning and submission of permissible documents related to the filing of pre-trial motions. *See* LR. 5.3 and LR 7.5 - 7.7. Non-moving parties need not file a separate "response" to a motion, only an opposition brief is required. *See* LR 7.5.

behavior involved inmates or staff. Investigation and reports related to the discharge of COs for sexual harassment and inappropriate workplace behavior not involving inmates is not clearly relevant to Mr. Moyer's claims against Prenata, Yeager, Galavage, Warden Berdanier or Schuylkill County and raises privacy concerns related to the victims of the alleges inappropriate behavior, whether staff or inmates. Accordingly, the Court will direct Warden Berdanier's counsel to submit the July 10, 2010, and November 13, 2010, reports to the Court for *in camera* review.

### B. The Shannon Report

On June 4, 2012, Mr. Moyer's counsel sent a subpoena to Robert Shannon via certified mail requesting the following documentation:

> All documents regarding your evaluation, review, and/or study of Schuylkill County Prison in 2011 including but not limited to all reports, statements, recordings, images, notes, transcripts and videos of any person providing information or created by you.

(Doc. 36-1 at ECF p. 2.) Plaintiff suggests the Shannon report is relevant as it is "reasonably calculated to lead to the discovery of admissible evidence because they detail defendant Warden's negligent supervision and staffing of the prison in the period immediately preceding Mr. Moyer's assault." (Doc. 41, Pl.'s Opp'n Br. Mot. for Protective Order at ECF p. 7.)

Warden Berdanier's counsel notes that:

> The documents of Robert Shannon include a consultation report of operations and security at the Schuylkill County Prison for the period from January 19, 2011, to March 10, 2011, prior to the incident involving

-11-

> the plaintiff and did not involve the plaintiff to any extent or any of the individual defendants.
>
> The report contains information relative to the operation and staffing of the security at the prison, as well as fire, safety and sanitation analysis. Defendant Gene Berdanier, as Warden of the Schuylkill County Prison advises that the release of the report will compromise security at the prison and is a critical analysis not intended for public disclosure.

(Doc. 37 at ECF p. 8.) Again, no supporting declaration is provided to substantiate the arguments and representations made by Warden Berdanier's counsel as to the Shannon report. However, in his Reply Brief (Doc. 43), Warden Berdanier's counsel provides a copy of a letter the Schuylkill County Open Records Officer (ORO) denying a local newspaper's request to the Schuylkill County Prison Board for the same report under Pennsylvania's Right-to-Know-Law (RTKL), 65 PA. CONS. STAT. ANN. §§ 67.101-67.3104 (2008). *See* Doc. 43-1, Laughlin Letter. The ORO noted that:

> Due to the subject matter of the requested report, which directly concerns specialized training, methods, equipment and specific recommendations for maintaining and improving the safety and security of the inmates and staff of the Schuylkill County Prison, as well as the prison facility itself, your request for a copy of "[t]he complete report with recommendations submitted to the prison board by the independent prison consultants team headed by Mr. Robert Shannon" must be denied, as the Right-to-Know Law specifically exempts from disclosure: a record the disclosure of which would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual (Section 708 (b)(1)(ii)); a record maintained by an agency in connection with law enforcement or other public safety activity that if disclosed would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity (Section 708(b)(2)); a record,

-12-

> the disclosure of which creates a reasonable likelihood of endangering the safety or the physical security of a building, public utility, resource, infrastructure, facility or information storage system (Section 708(b)(3)); the draft of a regulation, statement of policy, management directive, ordinance or amendment thereto prepared by or for an agency (Section 708(b)(9)); a record that reflects the internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations (Section 708(b)(10)(i)(A)); and a record of an agency relating to a noncriminal investigation (Section 708(b)(17)).

(*Id*.) The Schuylkill County ORO's security reasons for refusing to release the report is echoed in a news article submitted by Plaintiff. In the newspaper story, the Schuylkill County Controller, who had reviewed the Shannon report, refused to comment on it "because it relates to security issues of a sensitive nature and safety issues." (Doc. 40-1, Leslie Richardson, *City Police Probe of Prison Nears End*, Republican Herald, Apr. 14, 2011.)

While Warden Berdanier raises concern that the release of the Shannon report would likely be contrary to Pennsylvania's RTKL, as this matter concerns a federal claim raised in federal court, the federal rules of privilege, rather than any state rule, applies. *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000). Warden Berdanier, at this point, has thus not met his burden to preclude the release of the Shannon report under federal law. The Court, however, recognizes that in a prison setting there is always a serious need to maintain security for the staff, the inmates,

-13-

and all the citizens in the surrounding community. Given this grave concern, the Court will not order the disclosure of the Shannon report at this time. Warden Berdanier has two options: (1) the parties can enter into a mutually worded confidentiality agreement that would satisfy any security concerns Warden Berdanier may have regarding the release of the Shannon report; or (2) Warden Berdanier may submit the Shannon report to the Court for *in camera* inspection in conjunction with a properly supported memorandum of law setting forth any claim of privilege he believes to be applicable to the report. *See Redland Soccer Club v. Dep't of Army of U.S.*, 55 F.3d 827, 855 (3d Cir. 1995)("more than a bare conclusion or statement that the documents sought are privileged"); *see also United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980)(setting forth the appropriate manner in which claims of document privilege should be invoked). Pending the Warden's notification to the Court as to how he wishes to proceed with respect to the Shannon report, the Court directs that Mr. Shannon not comply with the Plaintiff's subpoena.

**V. Conclusion**

Based on the above, Warden Berdanier's Motion for a protective order is granted in part and denied in part. Mr. Carney is directed to produce a copy of his July 25, 2010, investigation and report related to CO Mark Sullivan's alleged assault of an inmate. Warden Berdanier is to submit the July 10, 2010, and November 13, 2010, Carney reports investigating the allegations of sexual harassment and inappropriate workplace behavior by COs Sullivan, Farrone and Harner to the Court

-14-

for *in camera* review. Warden Berdanier shall notify the Court as to how he wishes to proceed with respect to the release of the Shannon report. Pending the Court's resolution of the Court's *in camera* review of the two Carney reports, and possibly the Shannon report, neither Mr. Carney nor Mr. Shannon is to comply with Plaintiff's subpoena by producing any document other than directed by this Court.

An appropriate order follows.

              /s/ A. Richard Caputo
              **A. RICHARD CAPUTO**
              **United States District Judge**

**Date: February 26, 2013**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON MOYER, | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 3:CV-11-1811 |
| | : | |
| v. | : | (Judge Caputo) |
| | : | |
| GENE BERDANIER, *et al.*, | : | |
| | : | |
| Defendants | : | |

# O R D E R

**AND NOW**, this **26th** day of **FEBRUARY, 2013,** upon consideration of Warden Berdanier's Motion for a Protective Order (Doc. 36), and in accordance with the accompanying Memorandum, it is hereby **ORDERED** that:

1. Warden Berdanier's Motion for a Protective Order is **DENIED** with respect to Mr. Carney's July 25, 2010, investigation into an allegation of assault of an inmate by Corrections Officer Marl Sullivan.

2. Within thirty (30) days of the date of this Order, Mr. Carney shall comply with Plaintiff's subpoena *only* with respect to the July 25, 2010, investigation into allegations of Correction Officer Sullivan's assault of an inmate.

3. Within fourteen (14) days of the date of this Order, Warden Berdanier is to submit copies of Mr. Carney's July 10, 2010, and November 13, 2010, investigations into allegations of sexual harassment and inappropriate workplace behavior by Corrections Officers Farron, Harner and Sullivan to the Court for *in camera* review.

4. Within fourteen (14) days of the date of this Order, Warden Berdanier will advise the Court if he has entered into a confidentiality agreement with Plaintiff's counsel regarding the release of the Shannon report.

5.  If a confidentiality agreement is not sought by Warden Berdanier with respect to the Shannon report, or one cannot be reached by the parties, Warden Berdanier shall submit a copy of the Shannon report to the Court for *in camera* review on or before March 11, 2013.

6.  If Warden Berdanier submits the Shannon report to the Court for *in camera* review, he shall also simultaneously file a properly supported memorandum of law setting forth any claim of privilege he wishes the Court to consider when considering the release of the Shannon report. Mr. Moyer shall file an opposition brief within fourteen (14) days of any memorandum Warden Berdanier files related to the Shannon report.

7.  Pending this Court's inspection of the documents submitted for *in camera* review, neither Mr. Carney nor Mr. Shannon shall comply with Plaintiff's subpoena unless specifically directed by the Court.

                                              **/s/ A. Richard Caputo**
                                              **A. RICHARD CAPUTO**
                                              **United States District Judge**